IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, THE CHICAGO )
LABORERS' DISTRICT COUNCIL RETIREE )
HEALTH AND WELFARE FUND and )
CATHERINE WENSKUS, Administrator )
of the Funds, )
             )
       Plaintiffs, )   Case No. 17 C 8200
v. )
             )   Judge LEFKOW
BRANDON EXCAVATING, INC., f/k/a )
BRANDON EXCAVATING, LLC, an )
Indiana corporation, )
             )
       Defendant. )

## MOTION TO CONFESS JUDGMENT

Now come Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, (collectively referred to hereinafter as the "Funds"), by and through their attorney, G. Ryan Liska, and hereby move this Court for an confess judgment on the settlement agreement and installment note entered into by the parties in the above referenced matter. In support of this Motion, Plaintiffs state as follows:

1.   On November 13, 2017, the Funds filed a complaint against Brandon Excavating Inc., f/k/a Brandon Excavating, LLC ("Company") as a result of the Company's failure to

1

produce its books and records for an audit and its failure to submit and pay monthly fringe benefit and union dues reports for the period of August 2017 forward.

2. On April 8, 2019, the Funds and Company resolved this lawsuit when the parties entered into a Settlement Agreement, Installment Note and Guaranty of Payment and Indemnification wherein the Company and its owner Michael Szarmach agreed to pay all amounts in the Funds complaint. A true and accurate copy of the settlement agreement, installment note and guaranty are attached as Exhibit 1.

3. The Settlement Agreement and Installment Note required the Company to pay $53,000.00 to the Funds over the course of thirty-six (36) months with the Company remitting an initial down-payment of $5,421.93 on or before April 15, 2019 and the first monthly installment of $1,598.45 on or before May 15, 2019. (See Ryan Lacey Affidavit, Paragraph 4 which is attached as Exhibit 2)

4. As part of the Settlement Agreement, the Company admitted $59,051.83 was due; however, in order to resolve this matter the parties agreed to reduce the settlement amount to $53,000.00 provided that the Company comply with the terms and conditions of the settlement documents. The parties agreed that in the event that the Company defaulted on the terms and conditions of the settlement documents and failed to cure the default within the ten (10) day cure period judgment would enter in favor of the Funds and against the Company in the amount of $59,051.83 less any applicable credits.

5. By virtue of failing to remit the $5,421.93 Installment Note down-payment and first monthly installment of $1,598.45 the Company defaulted under the terms of the Settlement Agreement and Installment Note.

6. Paragraph 4 of the Settlement Agreement provides in the event that the Company fails to timely remit a settlement payment the Funds shall issue a written notice of default to cure within ten (10) days. In the event that the Company fails to cure the default, Paragraph 4 further provides that judgment shall enter in the amount of $59,051.83 plus any reasonable attorney's fees and costs incurred by the Funds as a result of enforcing the agreement.

7. On May 21, 2019, the Funds provided written notice of default to the Company and Michael Szarmach which set forth the reason for the default and further requested that the default be cured within ten (10) days. A true and accurate copy of the written notice of default which was sent via U.S. Mail is attached hereto as Exhibit 3. The Company however failed to cure the default. (See Lacey Affidavit, Paragraph 5).

8. By virtue of failing to remit the down-payment and first monthly installment and failing to cure the default, the Company is in default of the terms and conditions of the Settlement Agreement and Installment Note. Allowing for all just due credits judgment should enter against the Company in the amount of $59,051.83 plus $500.00 of attorney's fees incurred by the Funds as a result of preparation and filing of this motion.

WHEREFORE, Plaintiffs respectfully request that this Court grants it Motion to Confess Judgment and;

a. enter judgment in favor of the Funds and against Defendant Brandon Excavating, Inc. f/k/a Brandon Excavating, LLC in the amount of $59,051.83 plus $500.00 in attorney fees incurred by the Funds and enforcing the terms of the Settlement Agreement and Installment Note;

b. order Defendant Brandon Excavating, Inc. f/k/a Brandon Excavating, LLC to pay post judgment interest on the judgment amount until it is fully paid to the Funds;

c. and for any other relief deemed just and equitable.

June 4, 2019

Respectfully submitted,
Laborers' Pension Fund, et al.

By: /s/ G. Ryan Liska

G. Ryan Liska
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

## CERTIFICATE OF SERVICE

The undersigned attorney of record certifies that he caused a copy of the foregoing Plaintiffs' Motion to Confess Judgment to be served upon the following person(s) via U.S. First Class Mail, postage prepaid on this 4th day of June, 2019.

/s/ G. Ryan Liska

# SETTLEMENT AGREEMENT

This Settlement Agreement by and between Brandon Excavating, Inc., f/k/a Brandon Excavating, LLC. ("Brandon"), and the Laborers' Pension Fund, the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and Catherine Wenskus, Administrator of the Funds (collectively the "Funds") is hereby entered into;

**WHEREAS**, the Funds alleges that Brandon was at all times relevant a party to a Collective Bargaining Agreement with the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union") pursuant to which it also agreed to be bound to the terms the Funds' respective Agreements and Declarations of Trust, and are obligated to submit payment of benefit contributions and withhold and remit dues from the paychecks of Brandon's employees;

**WHEREAS**, the Funds filed a lawsuit to compel Brandon to produce its books and records for a fringe benefit compliance audit for the period February 24, 2017 through September 30, 2017 and to compel the submission and payment of fringe benefit and dues contribution reports for the period August 2017 forward. The lawsuit also request Brandon post and maintain a $5,000.00 fringe benefit bond as required by the collective bargaining agreement. (*Laborers' Pension Fund, et al v. Brandon Excavating, Inc., f/k/a Brandon Excavating, LLC*, Case No. 17 CV 8200 pending in the Northern District of Illinois, Eastern Division (Der-Yeghiayan) (hereinafter the "Lawsuit"));

**WHEREAS**, an audit was conducted for the period February 24, 2017 through September 30, 2017 which resulted in zero finding. During the pendency of the Lawsuit Brandon submitted and paid its monthly fringe benefit and union dues contribution reports for the period of August 2017 through April 2018 leaving May 2018 through January 2019 due and owning.

**WHEREAS**, Brandon admits that the total amount due and owing to the Funds as claimed in the Lawsuit is $59,051.83. However, in order to resolve this Lawsuit and avoid a potential collectability issue the Funds have agreed to accept $53,000.00 to settle all claims as set forth below.

**WHEREAS**, the Parties wish to resolve and settle the Lawsuit without any additional expense or litigation;

**NOW THEREFORE**, for and in consideration of the mutual promises contained in this Agreement, and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. Brandon shall pay the settlement sum of Fifty-Three Thousand and 00/100 Dollars ($53,000.00) plus 12% interest to address the alleged liabilities and to settle all claims set forth in the Lawsuit. The payment of the settlement sum shall be according to a three (3) year Installment Note and Guaranty which is attached to this Agreement as Exhibits A and B. The terms of the Installment Note and Guaranty are incorporated into this Agreement.

**EXHIBIT 1**

2. Brandon shall make a down payment of $5,421.93 on or before April 15, 2019. The first settlement monthly payment in the amount $1,598.45 is due May 15, 2019 with the remaining thirty-five (35) payments due on the 15th of each month thereafter. The final payment shall be made on April 15, 2022. All settlement payment checks shall made payable to the "Laborers' Pension and Welfare Funds." <u>Brandon will mail or deliver all checks to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154 and envelop should be placed to the attention of Ryan Lacey.</u>

3. Brandon also agrees to maintain and post a $5,000.00 wage and fringe benefit bond as required by the collective bargaining agreement. H&P agrees to post the bond within thirty (30) days of executing this Agreement. Failure to post the $5,000.00 bond within thirty (30) days shall constitute a default under this Agreement and shall result in the balance of the settlement amounts becoming immediately due and owing.

4. In the event Brandon fails to timely remit a settlement payment or post the $5,000.00 wage and fringe benefit bond, the Funds shall issue a written notice of default to Michael Szarmach, 128 S. 200W, Valparaiso, Indiana 46385. The written notice can also be delivered to Mr. Szarmach via email (brandon_excavating@yahoo.com). If Brandon fails to cure the default within ten (10) days the Funds shall move for judgment against Brandon for the uncompromised amount of $59,051.83 and shall be entitled to reasonable attorney fees and costs as a result of enforcing this Agreement.

5. The Parties shall file a Stipulation of Dismissal with the District Court requesting that the Lawsuit be dismissed without prejudice with leave to reinstate no later than May 15, 2022. Thereafter, absent the filing of any motion, the dismissal shall be automatically converted to a dismissal with prejudice.

6. Upon execution of this Agreement, Installment Note and Guaranty, Brandon shall be removed from the Funds' Contractor Delinquency List provided Brandon remains current on its monthly fringe benefit and union dues contribution payments.

7. This Agreement shall be binding upon the heirs, successors, and assigns of the Parties hereto. However, neither this Agreement nor its terms shall be construed as, or relied upon as, precedent as to the application of the relevant collective bargaining agreements or future dealings between the parties.

8. The persons signing below represent that they are authorized to execute this Agreement and bind their respective entities and themselves to the terms hereof.

9. This Agreement constitutes and represents the complete and entire agreement between the Parties. The terms of this Agreement may not be altered, modified, or supplemented except by a writing signed by each of the Parties.

10. The Parties confirm and agree that: (a) this Agreement is the result of negotiation and compromise; (b) in interpreting this Agreement, no Party shall be considered to be the drafter of it; (c) no language shall be strictly construed against any Party; and (d) this Agreement shall be interpreted consistent with the ordinary and reasonable meaning of the words used in it.

11. This Agreement may be executed in multiple counter parts with a facsimile copy signature or scanned/emailed copy signature as binding as the original.

12. This Agreement shall be construed in accordance with Illinois law without regard to choice of laws, except as preempted by applicable federal law.

For the Laborers' Pension Fund, the Laborers' Welfare Funds of the Health and Welfare Department of the Construction, the Retiree Health and Welfare Fund and General Laborers' District Council of Chicago and Vicinity, and Catherine Wenskus, Administrator of the Funds

_____
Catherine Wenskus, Administrator

Date: 4/19/2019

Brandon Excavating, Inc., f/k/a
Brandon Excavating, LLC

_____
Michael Szarmach, President

Michael Szarmach
Signature

Date: 4-16-19

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Welfare Fund"), and the Chicago Laborers' District Council Retiree Health and Welfare Fund ("Retiree Welfare Fund") (collectively the "Funds"), the parties of the first part, and Brandon Excavating, Inc., f/k/a Brandon Excavating, LLC (the "Company"), the party of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local 5 and the Construction and General Laborers' District Council of Chicago and Vicinity ("District Council"), whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues.

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the period of May 2018 to January 2019.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the District Council, for the audit period of May 2019 to January 2019.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the District Council, together with liquidated damages, and interest, as set forth below, and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $21,038.04 to the Welfare Fund (comprised of $13,641.60 in delinquent contributions, $1,364.16 in liquidated damages, $1,454.31 in attorney's fees and costs, $540.34 in audit costs and $4,037.63 in interest) (based on an interest rate of 12%). The Company will pay $11,077.92 to the Retiree Welfare Fund (comprised of $6,348.00 in delinquent contributions, $634.80 in liquidated damages, $1,454.31 in attorney's fees and costs, $540.34 in audit costs and $2,100.47 in interest). The Company will also pay $25,428.24 to the Pension Fund (comprised of $16,858.08 in delinquent contributions, $1,685.81 in liquidated damages, $1,454.31 in attorney's fees and costs, $540.34 in audit costs and $4,889.70 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 5 and 6.

2. The Company will also pay $1,055.51 to the Training Fund (comprised of $936 in delinquent contributions, $93.60 in liquidated damages and $25.91 in interest), $106.21 to the LECET Fund (comprised of $94.08 in delinquent contributions, $9.41 in liquidated damages and $2.72 in interest), $257.93 to the LDCMC Fund (comprised of $228.48 in delinquent contributions, $22.85 in liquidated damages and $6.60 in interest), $121.37 to the CAICA Fund (comprised of $107.52 in delinquent contributions, $10.75 in liquidated damages and $3.10 in interest) and $3,880.91 in union dues (comprised of $3,528.10 in delinquent contributions and $352.81 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed.

3. The Company will also pay the Funds or the sum of $4,362.93 representing attorney fees and costs incurred by the Funds in Case No. 17 C 8200. This amount is split between the Welfare, Retiree Welfare, and Pension Funds as described in paragraph 1 above.

4. The Company will also pay the Funds the sum of $1,621.02 in audit costs. This amount split equally between the Welfare, Retiree Welfare, and Pension Funds as described in paragraph 1 above.

5. For thirty-six (36) consecutive months commencing on May 15, 2019 and ending on April 15, 2022, the Company will pay $584.39 per month to the Welfare Fund, $307.72 to the Retiree Welfare Fund and $706.34 per month to the Pension Fund.

6. The total monthly payment is $1,598.45 and the check should be made payable to the "Laborers' Pension and Welfare Funds."

7. <u>The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154 and envelop should be placed to the attention of Ryan Lacey.</u>


EXHIBIT A

8. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the CBA and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.

9. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, all amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Funds under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

10. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note. The Company must also complete and submit monthly Job Notice Cover Sheets and individual Job Notices on the forms provided by the Funds by the first day of each month for the duration of this Note. Failure to comply with this term will result in a default on this Note and enable the Funds to accelerate all amounts due on this Note.

11. The Parties acknowledge and agree that any payments to the District Council provided for in this Installment Note fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement, or release of a claim, complaint, grievance, or dispute in the absence of fraud or duress.

12. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

13. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the 8th day of the April, 2019.

BRANDON EXCAVATING, INC., f/k/a BRANDON EXCAVATING, LLC

By: _____
Michael Szarmach

Title: President

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and Retiree Health and Welfare Fund.

By: _____
Catherine Wenskus, Fund Administrator

# GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of APRIL 8, 2019 by the undersigned, MICHAEL SZARMACH, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (the "District Council") and any related ancillary Funds to which Brandon Excavating, Inc., f/k/a Brandon Excavating, LLC, is obligated to pay contributions to by virtue of its Agreement with the District Council and the Funds' respective Agreements and Declarations of Trust (collectively the "Funds").

WHEREAS, Brandon Excavating, Inc., f/k/a Brandon Excavating, LLC. ("Company") has agreed to pay a total of $53,000.00 plus 12% interest over the course of thirty-six (36) months to the Funds in settlement of the delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW THEREFOREWHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. **Guaranty of Payment and Indemnification.** The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs and including any amount revealed as due and owing in an audit even if the audit is conducted after the Note is paid in full.

2. **Continuing Guaranty.** This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by: (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. **Waivers.** Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.



1

4. Subrogation. Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. Independent Obligations. The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. Acceleration. In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. Effect of Bankruptcy. This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. Termination. This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. The Company's Financial Condition. The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. Expenses. The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. Delay, Cumulative Remedies. No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. Binding Effect. This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. <u>Default.</u> The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

    (a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

    (b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

    (c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

    (d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

| In Case of Guarantor | In Case of the Funds: |
|---|---|
| Michael Szarmach<br>128 S. 200W<br>Valparaiso, IN 46385 | Collection Counsel<br>Ryan Liska<br>Laborers Pension & Welfare Fund<br>111 W Jackson Blvd<br>Suite 1415<br>Chicago IL 60604-3868 |

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

3

16. <u>Additional Waivers.</u> Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and inter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

20. <u>Death of a Guarantor.</u> In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

_____
Michael Szarnjach

Date: 4-16-19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND and CATHERINE WENSKUS, Administrator of the Funds, <br><br> Plaintiffs, <br> v. <br><br> BRANDON EXCAVATING, INC., f/k/a BRANDON EXCAVATING, LLC, an Indiana corporation, <br><br> Defendant. | Case No. 17 C 8200 <br><br> Judge LEFKOW |

## AFFIDAVIT OF RYAN LACEY

RYAN LACEY, being first duly sworn on oath, deposes and states as follows:

1. I am Director of Financial Operations, Director of the Field Department and a Field Representative employed by the Laborers' Pension Fund and the Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity and Laborers' District Council Retiree Health and Welfare Fund (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above-referenced action. My responsibilities include oversight of the collection of amounts owed by Defendant Brandon Excavating, Inc. (hereinafter "Company"). This Affidavit is submitted in support of the Laborers' Funds' Motion to Confess Judgment. I have personal knowledge regarding the statements contained herein.

EXHIBIT 2

2. I am familiar with the Construction and General Laborers' District Council of Chicago and Vicinity's Independent Construction Industry Collective Bargaining Agreement, the Funds' respective Agreements and Declarations of Trust and the collection policies adopted by the Funds' Trustees.

3. The Funds filed a lawsuit against the Company which ultimately settled. The terms and conditions of the parties' settlement are contained in the Settlement Agreement, Installment Note and Guaranty of Payment and Indemnification. True and accurate copies of those settlement documents are attached to the Funds' Motion as Exhibit 1.

4. The settlement agreement, installment note and guaranty required the Company to pay $53,000.00 to the Funds over the course of thirty-six (36) months with the Company remitting an initial down-payment of $5,421.93 on or before April 15, 2019 and the first monthly installment of $1,598.45 on or before May 15, 2019.

5. I reviewed the Funds' LPWF computer program which tracks signatory employers' payments of fringe benefit dues reports and payments towards installment notes entered into by Companies. As of the date of this Affidavit the Company failed to pay the $5,421.93 Installment Note down payment or the first monthly installment of $1,598.45.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Ryan Lacey

Subscribed and sworn to before me
this 4th day of June, 2019.

_____
Notary Public

ELIZABETH A GALLAGHER
Official Seal
Notary Public - State of Illinois
My Commission Expires Apr 13, 2020



**LABORERS' PENSION FUND and HEALTH and WELFARE DEPARTMENT of the CONSTRUCTION and GENERAL LABORERS' DISTRICT COUNCIL of CHICAGO and VICINITY and CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH and WELFARE FUND**

MAIN OFFICE
11465 CERMAK ROAD
WESTCHESTER, ILLINOIS 60154-5768
Telephone: (708) 562-0200
www.chicagolaborersfunds.com

CHICAGO OFFICE
111 W. JACKSON BLVD., SUITE 1415
CHICAGO, ILLINOIS 60604-3868
Telephone: (312) 692-1540
Fax: (312) 692-1489

*From the Office of Fund Counsel*

**BOARD OF TRUSTEES**

*Administrator*
CATHERINE WENSKUS

*Secretary*
DAVID H. LORIG

**PENSION FUND**

*For Labor*
ANTHONY CANTONE
JAMES P. CONNOLLY
PAUL P. CONNOLLY
SHAWN FITZGERALD
CHARLES V. LOVERDE, III

*For Employers*
ROBERT J. HOPKINS, JR.
CLIFTON M. HORN
KAREN ELIN JOHNSON
ROBERT G. KRUG
DAVID H. LORIG
GARY LUNDSBERG

**WELFARE FUND**

*For Labor*
JAMES P. CONNOLLY
MARTIN T. FLANAGAN
RICHARD KUCZKOWSKI
CHARLES V. LOVERDE, III
WILLIAM J. MARTIN

*For Employers*
JULIE CHAMBERLIN
CHARLES J. GALLAGHER
CLIFTON M. HORN
DAVID H. LORIG
DENNIS P. MARTIN
ANTHONY J. RICCARDI

**RETIREE WELFARE FUND**

*For Labor*
JAMES P. CONNOLLY
MARTIN T. FLANAGAN
RICHARD KUCZKOWSKI
CHARLES V. LOVERDE, III
WILLIAM J. MARTIN

*For Employers*
JULIE CHAMBERLIN
CHARLES J. GALLAGHER
CLIFTON M. HORN
DAVID H. LORIG
DENNIS P. MARTIN
ANTHONY J. RICCARDI

May 21, 2019

Brandon Excavating, LLC.
c/o Michael Szarmach
128 S. 200W
Valparaiso, IN 46385

Re: *Laborers' Pension and Welfare, et al. v. Brandon Excavating, Inc., f/k/a Brandon Excavating, LLC*
Case No.: 17 C 8200

Dear Mr. Szarmach:

This letter is written for purpose of providing you notice that Brandon Excavating, Inc., f/k/a Brandon Excavating, LLC ("Company") and you are in default of the terms and conditions of Installment Note and Guaranty of Payment Indemnification Agreement you executed on April 16, 2019. Those documents obligated the Company to remit a down-payment of $5,421.93 on or before April 15, 2019. Further, the Installment Note provided that the Company was to remit its first monthly payment of $1,598.45 on May 15, 2019. The Company failed to do either.

In the event the Company does not cure the default within 10 business days, the Funds will exercise its right to collect the full amount prayed for in its Complaint, plus all attorney fees incurred as a result of the default.

In the event that you have any questions, feel free to contact me.

Sincerely,

G. Ryan Liska
GRL/va

**EXHIBIT 3**

EMPLOYER PARTICIPANTS –
Builders' Association, Employing Plasterers' Association, Underground Contractors' Association, Mason Contractors' Association, Concrete Contractors' Association, Wrecking Contractors, Concrete Products Employers, Lake County Illinois Employers, Illinois Road Builders Association, Bridge and Highway Structural Builders; i.e. all those who employ Laborers Engaged in the Building and Construction Industry.